UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JIMMY MITCHELL, JT BIRDINE, LASHAUNDA BOYD, CARLA BROOKS, ANTOINETTE BROWN, DARRELL BROWN, CHRIS BURNS, LARRY EVANS, MARQUES FREDERICK, RICHARD HEARN, MARGARET JILES, KRISTI KING, CHERYL LANE, CRYSTAL LANE, MARY LEEKS, CARLA MASON, DONTRAIL MATHIS, MARANDA MCCULLOCH, KEYON MITCHELL, TIERNEY MITHCELL, DELORES MORGAN, MARTHA SHEPHERD, DOMINQUE SMITH, ELLICH WILLIAMS, JEWEL WILLIAMS, and MICKEY WISE, | § | |
| | § | |
| *Plaintiffs,* | § | CIVIL ACTION NO. 5:15-CV-19-JRG |
| v. | § | |
| PILGRIM'S PRIDE CORPORATION, et al., | § | |
| *Defendants.* | § | |

## MOTION TO COMPEL ARBITRATION

COMES NOW the Defendant, Pilgrim's Pride Corporation ("Pilgrim's"), and requests an Order of the Court compelling arbitration of all claims asserted by the Plaintiffs and to dismiss the Plaintiffs' action or, in the alternative, stay this action pending resolution of such arbitration proceedings. In support of its Motion, Pilgrim's states as follows:

1

# INTRODUCTION

1. Effective April 1, 2008, Pilgrim's adopted its current "Policy of Arbitration of Employment-Related Disputes" (hereinafter "Arbitration Policy"). *See* Ruben Lopez Affidavit, ¶ 3, Exhibit 1.

2. The Arbitration Policy identifies the claims covered and excluded, the procedures to govern the arbitration proceedings and related terms.

3. Section 18 of the Arbitration Policy provides as follows:

> <u>Separate Agreement</u>. The Partner shall be required to execute a separate agreement acknowledging his or her acceptance of the terms of this Policy. That agreement is attached hereto. Such agreement shall be maintained in the Partner's personnel file or in an electronic database, if available. Failure by the Partner to execute such agreement shall not void this Policy, and the Partner's continued employment shall also constitute acceptance of the terms of this Policy should there be no written agreement signed by the Partner on file.

4. In accordance with Section 18 of the Arbitration Policy, at least 20 of the 26 named Plaintiffs have executed an individual "Partner Arbitration Agreement" which, in relevant part, states:

> As set forth more fully in the Arbitration Policy, Partner and the Company agree that any controversy, dispute or claim, including all contract, tort, discrimination, harassment and other statutory claims, arising under or relating to this Agreement, Partner's employment or its termination, any claim the Company may have against the Partner, including the arbitrability of those claims, alleged by Partner or the Company, shall be resolved exclusively by arbitration. Such arbitration shall be final and binding on the parties. Partner and the Company waive any rights either may have to a jury trial in regard to the arbitrable claims.

*See* Ruben Lopez Affidavit, ¶ 5, Exhibits 2-21.[1]

---

[1] Pilgrim's has not been able to locate a signed Partner Arbitration Agreement for six (6) of the named Plaintiffs: Margaret Jiles, Martha Shepherd, Larry Evans, Tierney Mitchell, Delores Morgan and JT

5. For all employees hired after April 1, 2008, Pilgrim's routinely addressed the Arbitration Policy in detail in the "New Hire Orientation Program" in which each new employee is trained on Pilgrim's work related policies, including the Arbitration Policy; and is provided with a copy of those policies. *See* Ruben Lopez Affidavit, ¶ 9, Exhibit 24.

6. At the time of its adoption, Pilgrim's also provided each then existing employee with an April 1, 2008 memo which transmitted a complete copy of the Arbitration Policy together with "Frequently Asked Questions" ("FAQ's"). *See* Ruben Lopez Affidavit, ¶ 7, Exhibit 22. In relevant part, the memo also stated:

> "We are asking every Partner to sign and return the back page of the Partner Arbitration Agreement to your local Human Resources Department. <u>However, as stated in the policy, the policy applies to all Partners regardless of whether you complete and sign the agreement</u>." (*emphasis added*)

7. The April 1, 2008 memo was provided to then existing Pilgrim's employees in both English and Spanish. *See* Ruben Lopez Affidavit, ¶ 7. In addition to delivering a copy of the Arbitration Policy and FAQ's to each existing employee, supervisors of Pilgrim's held group meetings with employees to explain the Arbitration Policy. *See* Ruben Lopez Affidavit, ¶ 8, Exhibit 23.

8. Following a review of the Arbitration Policy with both new hires and existing employees, each employee was required to execute the "Partner Arbitration Agreement" which is

---

Birdine. *See* Ruben Lopez Affidavit, ¶ 6. Following adoption of the Arbitration Policy, Pilgrim's provided each then existing employee with an April 1, 2008 memo which transmitted a complete copy of the Arbitration Policy and FAQ's and requested each employee to execute and return the Partner Arbitration Agreement. The April 1, 2008 memo was followed up with group meetings held by supervisors to further explain and answer questions related to Pilgrim's Arbitration Policy. Similarly, as part of the orientation process for all new hires, Pilgrim's explained each of its policies, including the Arbitration Policy, and required each new employee to execute an Arbitration Agreement. In addition, since April 2008 all employees hired by Pilgrim's have completed an Application for Employment in which they acknowledge Pilgrim's Arbitration Policy and agree to its terms. *See* Ruben Lopez Affidavit, ¶¶ 7-10, Exhibits 22-24. On such basis, Pilgrim's believes that each Plaintiff executed the Partner Arbitration Agreement. *See* Ruben Lopez Affidavit, ¶ 6.

incorporated into the Arbitration Policy and together become the entire Arbitration Agreement between Pilgrim's and its employees. *See* Ruben Lopez Affidavit, ¶¶ 7, 8. (Hereinafter the Arbitration Policy and the Partner Arbitration Agreement will be collectively referenced to as the "Arbitration Agreement".) [2]

9. Since approximately April 2008, Pilgrim's "Application for Employment" form has also included a provision in which the employee acknowledges Pilgrim's Arbitration Policy and agrees to its terms.[3] *See* Ruben Lopez Affidavit, ¶ 10, Exhibits 25, 26. Under the "Application Certification and Agreement" section of the Employment Application, each employee certifies:

> As an applicant or employee of Pilgrim's, I understand that I am subject to the company's Policy of Arbitration of Employment Related Disputes. Under that policy, except in limited situations, the company and I agree to resolve any dispute concerning my employment in arbitration as opposed to a court of law. By signing below, I agree to terms of such policy and to arbitrate any dispute between me and the company.

*Id.*

## ARGUMENT

10. The Federal Arbitration Act[4] ("FAA") provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy

---

[2] Even if for some reason a Plaintiff failed to execute the Partner Arbitration Agreement, he/she was provided notice of the Arbitration Policy and by his/her continued employment accepted the Arbitration Policy. *See In re Haliburton*, 80 S.W.3d 566, 569 (Tex. 2002); *Johnson v. Coca-Cola Refreshments USA, Inc.*, No. 4:11-CV-649, 2012 WL 695837, at *2 (E.D. Tex. Feb. 3, 2012) (continued employment constitutes acceptance once employer notifies employee of policy); *Okocha v. Hospital Corporation of America, Inc.*, 2011 WL 4944577 (N.D. Tex. Oct. 18, 2011) (continued employment constitutes acceptance of Arbitration Policy after notice of the policy).

[3] Although Pilgrim's is presently unable to locate a signed copy of the Arbitration Agreement for Tierney Mitchell and Delores Morgan, they were clearly given notice of the Arbitration Policy and agreed to its terms through, inter alia, the certification on their Employment Application. *See* Ruben Lopez Affidavit, ¶ 11, Exhibits 25, 26.

[4] Section 5 of the Arbitration Policy provides that "the parties agree that the Federal Arbitration Act, as opposed to any state arbitration statutes, shall apply to the interpretation and application of this policy." *See* Ruben Lopez Affidavit, ¶ 3, Exhibit 1.

4

> thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The statute "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); *Johnson v. Coca-Cola Refreshments USA, Inc.*, 2012 WL 695837, at *2 (E.D. Tex. Feb. 3, 2012); *Okocha v. Hospital Corporation of America*, 2011 WL 4944577 (N.D. Tex. October 18, 2011).

11. The FAA reflects a "liberal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (quoting *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). "A party seeking to invalidate an arbitration bears the burden of establishing its invalidity." *Sosa v. PARCO Oilfield Servs., Ltd.*, 2006 WL 2821882 at *2 (E.D. Tex. Sept. 27, 2006) (*citing Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)).

12. Courts employ a two-step process to determine whether to compel arbitration of a dispute. First, the court must determine whether there is a valid agreement to arbitrate between the parties and, second, whether the dispute in question falls within the scope of that arbitration agreement. *Hendricks v. UBS Financial Services*, No. 13-40692, 546 F. App'x 514 (5th Cir. Nov. 11, 2013); *Pers. Sec. & Safety Sys. Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002).

## A. The Arbitration Agreements Are Valid and Enforceable.

13. Whether there is a valid agreement between the parties is determined in accordance with state law. *Johnson v. Coca-Cola Refreshments USA, Inc.*, 2012 WL 695837, at *2 (E.D. Tex. Feb. 3, 2012); *Barker v. Halliburton Company*, 541 F. Supp. 2d 879, 883 (S.D. Tex. 2008); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). *See also Pacheo v. PCM Construction Services, LLC*, No. 14-10193 (5th Cir. Feb. 19, 2015) ("The determination of whether there is a valid agreement to arbitrate is generally governed by ordinary state law principles that govern the formation of contracts."). Like federal law, Texas law "will not invalidate an arbitration agreement absent compelling reasons of law or equity for the revocation of contract, like fraud or unconscionability." *Barker, supra* at 883.

14. The First Amended Complaint ("FAC") contains no allegations that Plaintiffs were fraudulently induced to enter into the Arbitration Agreement, were misled or otherwise incapable of understanding their arbitration obligations. All of the Plaintiffs executed the Partner Arbitration Agreement and certified:

> **I HAVE READ THIS AGREEMENT CAREFULLY AND I UNDERSTAND AND ACCEPT THAT I GIVE UP MY RIGHT TO TRIAL BY JURY OF ANY CLAIM ARISING OUT OF MY EMPLOYMENT, AS SET FORTH ABOVE. NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME TO INDUCE ME TO SIGN THIS AGREEMENT. I SIGN THIS AGREEMENT VOLUNTARILY AND FREELY.**

*See* Affidavit of Ruben Lopez, ¶5, Exhibits 2-21.

15. In addition to the mutual promises of the parties to arbitrate, Plaintiffs' employment or continued employment with Pilgrim's is sufficient consideration for the Arbitration Agreement. *In re Halliburton Company*, 80 S.W.3d 566, 568-569 (Tex. 2002)

("continued employment with knowledge of the Arbitration Policy constituted acceptance as a matter of law").

16. Texas courts recognize two types of unconscionability: procedural and substantive. *In re Halliburton, supra* at 572. Substantive unconscionability refers to the "fairness of the arbitration provision itself," whereas procedural unconscionability refers to the "circumstances surrounding adoption of the arbitration provision." *Id.* at 571.

17. Arbitration agreements are not inherently unconscionable. *Barker* at 885. Both the United States Supreme Court and the Texas Supreme Court have made clear that a court may "not presume an arbitration clause is unconscionable based on policy arguments about general unfairness of mandatory employment arbitration provisions." *Jones v. Halliburton*, 652 F. Supp. 2d 339, 348 (S.D. Tex. 2008). *See also Sosa v. PARCO Oilfield Servs., Ltd.*, 2006 WL 2821882, at *4 (E.D. Tex. Sept. 27, 2006) ("The Texas Supreme Court has upheld arbitration agreements between employers and employees, despite claims of unequal bargaining power and lack of opportunity to negotiate.").

18. The party contesting the contractual arbitration provision has the burden to show procedural unconscionability. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004); *Barker* at 885. Moreover, "unequal bargaining power" is not a sufficient reason to hold, as unenforceable, an arbitration agreement in an employment context. *Sosa v. PARCO Oilfield Servs., Ltd.*, 2006 WL 2821882, at *4 (E.D. Tex. Sept. 27, 2006); *Jones*, 652 F. Supp. at 346.

> Under Texas law, arbitration agreements are not inherently unconscionable, even if they might be considered contracts of adhesion. *See Carter*, 362 F.3d at 301 ("In Texas, there is nothing per se unconscionable about arbitration agreements; indeed, parties claiming unconscionability bear the burden of demonstrating it."); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006);

> *In re Advance PCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005). The Texas Supreme Court has also held that it is not unconscionable, without more, to require an at-will employee to accept a "take-it-or leave it" arbitration provision as a condition of employment. *See In re Halliburton*, 80 S.W.3d at 572 ("Because an employer has a general right under Texas law to discharge an at-will employee, it cannot be unconscionable, without more, merely to premise continued employment on acceptance of new or additional employment terms.").

*Jones*, 652 F. Supp. at 346.

19. Whereas procedural unconscionability focuses on the circumstances giving rise to the Arbitration Agreement, substantive unconscionability "refers to the fairness of the arbitration agreement itself," *Halliburton*, 80 S.W.3d at 571, and asks "whether the clause is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *Barker* at 885 (quoting *In Re FirstMerit Bank, N.A.* 52 S.W.3d 749, 757 (Tex. 2001). Substantive unconscionability is intended to reach oppressive and unfair surprise, not just adjust the bargaining power between the parties." *Id.*

20. Pilgrim's Arbitration Policy is neither procedurally nor substantively unconscionable. Subsequent to its April 1, 2008 adoption and as part of the New Hire Orientation Program, the Arbitration Policy and Arbitration Agreement were explained to each new employee and opportunity was provided for any questions. *See* Affidavit of Ruben Lopez, ¶ 9. The Arbitration Policy was similarly explained to then existing employees through memoranda and meetings. *See* Affidavit of Ruben Lopez, ¶¶ 7, 18. Prior to execution of the Partner Arbitration Agreement, each Plaintiff was provided with a complete copy of the Arbitration Policy. *See* Affidavit of Ruben Lopez, ¶¶ 7, 9. Each Plaintiff voluntarily executed the Partner Arbitration Agreement and is presumed to have read it. "A party who signs a contract is charged with notice of its contents as a matter of law." *Barker* at 855. Moreover, the Fifth Circuit has held that general assertions that a plaintiff did not read or understand the terms

of the agreement or that the defendant did not adequately explain the agreement do not suffice to establish fraud or unconscionability. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 430-31 (5th Cir. 2004); *Sosa v. PARCO Oilfield Servs., Ltd.*, 2006 WL 2821882 at *5 (E.D. Tex. Sept. 27, 2006).

21. Nor is the Arbitration Agreement substantively unconscionable. The provisions of the Arbitration Agreement apply equally to Pilgrim's and its employees. The Arbitration Agreement does not in any way limit the legal remedies available to a Plaintiff. Indeed, the Arbitration Policy expressly provides that "[t]he arbitrator has the same (but not more) authority to order remedies, including monetary damages as any court or agency would have had jurisdiction to adjudicate the claims absent this Policy." Affidavit of Ruben Lopez, Exhibit 1, ¶ 5. The Arbitration Policy allows representation by counsel; discovery and motion practice under the Federal Rules of Civil Procedure; and, provides for a reasoned decision setting forth the factual and legal basis of the arbitrator's final award. *Id.*, ¶¶ 5, 8, 12 and 13.

**B.      Plaintiff's Claims are Within the Scope of the Arbitration Agreement.**

22. "Once a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *BancOne Acceptance Corp.*, 367 F.3d at 429. *See also Klein v. Nabors Drilling USA, LP*, 710 F.3d 234, 237 (5th Cir. 2013) (when determining the scope of a valid arbitration agreement, "we apply the federal policy and resolve all ambiguities in favor of arbitration").

23. The dispute in question falls with the scope of the Arbitration Agreement. In their FAC, the Plaintiffs allege individual discrimination claims based on race, color, and sex, along with retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000e et seq., and 42 U.S.C. § 1981a et seq. These claims are clearly covered by the Arbitration Agreement between the parties. *See* Affidavit of Ruben Lopez, Exhibit 1, p. 1.

24. As noted above, the Partner Arbitration Agreement states that "any dispute or claim, including all contract, tort, discrimination, harassment and other statutory claims," that have arisen under or relating to the "Partner's employment or its termination, . . . shall be resolved exclusively by arbitration." *See* Affidavit of Ruben Lopez, Exhibit 1, p. 5. Additionally, the Arbitration Policy provides that it covers "disputes arising from the Partner's employment and the termination of the Partner's employment" as well as any claims or disputes "that the Partner might have against the Company, its owners, affiliates, officers, directors, employees and/or agents." *See* Affidavit of Ruben Lopez, Exhibit 1, p. 1. The Arbitration Policy also specifically provides that it covers "all claims under state or federal law including, without limitation, Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. . . . and all other injuries, losses, liabilities, or damages allegedly caused to Partner by the Company under state or federal statute, administrative rule, regulation and/or common law, and any other claim that could be tried by a judge or jury in the absence of this Agreement." *Id.* Plaintiffs' individual claims based on race, color, sex, and retaliation are undoubtedly covered by this provision.

25. The Arbitration Policy also includes certain exclusions, including an exclusion regarding "class or collective actions." Specifically, the exclusion provides that "[t]his Arbitration Policy is not intended to cover class or collective actions and this Policy is not intended to vest in any arbitrator the authority or jurisdiction to hear class or collective-action claims under any state, federal or other law." *See* Affidavit of Ruben Lopez, Exhibit 1, p. 2. This exclusion clearly does not apply to the Plaintiffs' action.

26. Plaintiffs' action was brought by twenty-six (26) individuals, each with individual claims contained in the FAC. Indeed, the FAC contains separate sections specifically relating to each individual Plaintiff, labeled by that individual's name. The FAC references neither a collective nor a class action. In fact, nowhere in the FAC does it state or indicate that the action was brought as a class or collective action "on behalf of" any other potential members of any class or collective action. *See, e.g.,* Fed. R. Civ. P. 23 (providing that one or more members of a class may sue as representative parties "on behalf of all members"); *Allen v. McWane, Inc.*, 593 F.3d 449 (5th Cir. 2010) (recognizing a collective action under the Fair Labor Standards Act "on behalf" of hourly employees). Rather, the Plaintiffs have simply joined their claims as contemplated by Federal Rule of Civil Procedure 20(a).

27. A Rule 20(a) suit clearly differs from a class or collective action. For instance, in *Allen v. Atlantic Richfield Co.*, 74 F.2d 1131 (5th Cir. 1984), the Fifth Circuit found that the plaintiffs in that case had brought an action with multiple plaintiffs under Rule 20(a) and the action was not a collective or class action. The court explained:

> In this case, each claimant is a named plaintiff. This suit consists of a number of individual actions, not a collective or class action subject to sections 16(b) and 256. The twenty-two plaintiffs through their lawyer alleged individual causes of action and sought individual relief in the form of individual damage claims. None of the individual plaintiffs sought to represent others of the named plaintiffs as well as themselves. These twenty-two named plaintiffs, then, have simply joined their actions as permitted by Fed.R.Civ.P. 20(a); their causes of action arose out of the same series of transactions or occurrences.

*Id.* at 1135.

28. The same is true here. Nowhere within Plaintiffs' FAC is there any indication that this action was filed as a representative action. Rather, the FAC asserts individual claims which appear to have been joined under Rule 20(a) of the Federal Rules of Civil Procedure.

There is a significant difference between pleading a collective action case and pleading individual claims joined under Rule 20(a). *See Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1133 (D. Nev. 1999) ("By contradistinction, a suit which consists of a number of individual actions joined under Rule 20(a) of the Federal Rues of Civil Procedure is not a 'collective action.'"). *See also Hallak v. L3 Communications Corp.*, 490 F. App'x 2, 5 (9th Cir. 2012) ("The term 'collective action' is not defined under the FLSA. Legislative history, however, indicates Congress intended the term to apply only to a representative action.") Nowhere in their FAC do Plaintiffs assert that they have filed a "collective" or "class" action. Indeed, as noted above, Plaintiffs never assert that their action is being brought "on behalf of" anyone other than themselves. Instead, in their FAC, the Plaintiffs each assert individual actions with separate, individual facts and prayer for relief "on behalf of themselves" only. There is no allegation or indication that Plaintiffs intended to file a class or collective action.

29. As noted above, when determining the scope of a valid arbitration agreement, courts must "resolve all ambiguities in favor of arbitration." *BankOne Acceptance Corp.*, 367 F.3d at 429. Thus, any ambiguity related to the "class or collective actions" exclusion in the Arbitration Policy must be resolved in favor of arbitration. As described above, Plaintiffs' action is a Rule 20(a) action, which differs from a "class" or "collective" action. As a result, their action does not fall under the "class or collective action" exclusion of the Arbitration Policy and is within the scope of the Arbitration Agreement.

30. Because the Arbitration Agreements entered into between Pilgrim's and each individual Plaintiff are valid and enforceable agreements to arbitrate and the claims asserted by each individual Plaintiff are within the scope of the Arbitration Agreement, Plaintiffs' individual claims should be arbitrated and this action dismissed and/or stayed.

WHEREFORE, Defendants respectfully request an Order of the Court compelling arbitration of all claims asserted by the Plaintiffs and to dismiss the Plaintiffs' action or, in the alternative, stay this action pending resolution of such arbitration proceedings.

DATED this 11th day of September, 2015.    Respectfully submitted,

/s/ *Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
Texas Bar No. 00784720
jainsworth@wilsonlawfirm.com
WILSON ROBERTSON & CORNELIUS, P.C.
One American Center
909 ESE Loop 323, Suite 400
Tyler, TX 75701
(903) 509-5000 (telephone)
(903) 509-5092 (facsimile)

James J. Frost (NE 16560)
A. Stevenson Bogue (NE 15509)
Abigail McKenzie Moland (NE 23741)
MCGRATH NORTH MULLIN & KRATZ, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102
(402) 341-3070 (telephone)
(402) 341-0216 (facsimile)
jfrost@mcgrathnorth.com
sbogue@mcgrathnorth.com
amoland@mcgrathnorth.com

ATTORNEYS FOR DEFENDANT
PILGRIM'S PRIDE CORPORATION

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 11, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent an electronic copy of the foregoing document to all counsel of record.

*/s/ Jennifer P. Ainsworth*
Jennifer P. Ainsworth

**CERTIFICATE OF CONFERENCE**

This is to certify that counsel for Defendant has conferred with counsel of record for Plaintiff pursuant to Local Rule CV-7(h) concerning this Motion. Plaintiff has indicated that the Motion is opposed. The discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Jennifer P. Ainsworth*
Jennifer P. Ainsworth