**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **JIMMY MITCHELL, *et al.*,** | § | |
| | § | **Civil Action No. 5:15-CV-19** |
| ***Plaintiffs,*** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **PILGRIM's PRIDE INC., *et al*.** | § | |
| | § | |
| ***Defendants*** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT PILGRIM'S PRIDE INC.'S MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

**I. Analysis** ........ 2

**A. The Alleged Arbitration Agreements are Invalid and Unenforceable.** ........ 3

**1. Defendant has not carried its burden of showing that six of the plaintiffs had any arbitration agreement** ........ 3

**2. The arbitration agreements that Defendant produced were unconscionable when made and unenforceable under Texas and Federal Law** ........ 4

***a. The Plaintiffs' Inability to Pay Significantly Interferes with Plaintiffs' Ability to Pursue Statutory Rights*** ........ 7

***b. The Expected Cost Differential between Arbitration and Litigation is Significant Enough to Affect Plaintiffs' Statutory Rights*** ........ 9

**3. The Federal Arbitration Act does not apply to Plaintiffs who worked in shipping.** 11

**4. None of the Plaintiffs have any arbitration agreement with the JBS Defendants.** 11

**B. At a Minimum, Discovery is Needed to Learn Whether the Alleged Arbitration Agreements are Enforceable.** ........ 11

**1. If Defendant retained a unilateral right to modify its Arbitration Policy, then the consideration for the Arbitration Agreements was illusory** ........ 11

**2. If Defendant has Entered Certain Government Contracts or Subcontracts, then the Arbitration Agreement is Unenforceable.** ........ 12

**II. Conclusion** ........ 14

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bradford v. Rockwell Semiconductor Systems, Inc.*,
238 F.3d 549 (4th Cir.2001) ........ 6

*Carey v. 24 Hour Fitness, USA, Inc.*,
669 F.3d 202 (5th Cir. 2012) ........ 11

*Cole v. Burns Int'l Sec. Servs.*,
105 F.3d 1465 (C.A.D.C.1997) ........ 5

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ........ 1, 5, 7, 10

*Green Tree Fin. Corp. v. Randolph*,
531 U.S. 79 (2000) ........ 2, 4

*In re 24R, Inc.*,
324 S.W.3d 564 (Tex.2010) ........ 12

*In re Olshan Found. Repair Co., LLC*,
328 S.W.3d 883 (Tex. 2010) ........ 4, 6

*In re Poly–Am., L.P.*,
262 S.W.3d 337 (Tex. 2008) ........ 2, 4, 6

*Jones v. Fujitsu Network Commun., Inc.*,
81 F. Supp. 2d 688 (N.D. Tex. 1999) ........ 7

*Jones v. Halliburton Co.*,
583 F.3d 228 (5th Cir. 2009) ........ 2

*Magdaleno v. PCM Const. Servs., LLC*,
2014 WL 1760942 (S.D. Tex. May 1, 2014) ........ 3

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ........ 10

*Morrison v. Cir. City Stores, Inc.*,
317 F.3d 646 (6th Cir. 2003) ........ passim

*Paladino v. Avnet Computer Techs., Inc.*,
134 F.3d 1054 (11th Cir.1998) ........ 5

*Rojas v. TK Commun., Inc.*,
87 F.3d 745 (5th Cir. 1996) .......... 11

*Shankle v. B–G Maint. Mgmt. of Col., Inc.*,
163 F.3d 1230 (10th Cir.1999) .......... 4

*Sharpe v. AmeriPlan Corp.*,
2013 WL 3927620 (N.D. Tex. July 30, 2013) .......... 1, 7

*Williams v. Cigna Fin. Advisors Inc.*,
197 F.3d 752 (5th Cir. 1999) .......... 4, 5, 6

*Williams v. Hoyt*,
556 F.2d 1336 (5th Cir.1977) .......... 3

*Zinante v. Drive Elec., L.L.C.*,
582 Fed. Appx. 368 (5th Cir. 2014) .......... 3

**Statutes**

9 U.S.C. § 1 .......... 11

Department of Defense Appropriations Act, 2010,
PL 111-118, §8116, 123 Stat 3409, 3454-55 (2009) .......... 12

TEX. CIV. PRAC. & REM.CODE § 171.022 .......... 4

**Regulations**

48 C.F.R. § 222.7400 *et seq* .......... 2, 13

Exec. Order No. 13673,
79 Fed. Reg. 45309 (July 31, 2014) .......... 13

**Other Authorities**

JAMS Employment Arbitration Rules and Procedures .......... 10

"The Supreme Court has made clear that statutory rights, such as those created by Title VII, may be subject to mandatory arbitration only if the arbitral forum permits the effective vindication of those rights." *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 658 (6th Cir. 2003) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)).

Defendant Pilgrim's Pride Corporation's Motion to Compel Arbitration (the "Motion") seeks to deny 26 individual African-American factory worker Plaintiffs the opportunity to vindicate their Title VII civil rights in a court of law. According to Defendant, its corporate arbitration policy and alleged pre-dispute contracts with some (but not all) of the factory workers limit Plaintiffs to seeking justice from Defendant's preferred arbitration company for the racist harassment and discrimination they suffered. Defendant's Motion argues that factory workers paid less than $11/hour may only vindicate their civil rights if they first split arbitration costs fifty-fifty with a corporation with $8.5 Billion in annual revenue and a market capitalization of $5.5 Billion.[1] But the law does not countenance such barriers to justice.

"Both the United States and Texas Supreme Courts have recognized that excessive costs of arbitration are sufficient to render an arbitration clause unenforceable" because such costs can prevent effective vindication of Title VII rights. Defendant's Motion to Compel fails because its corporate arbitration policy shifts excessive costs onto Plaintiffs, rendering it unconscionable and unenforceable under Texas and United States Supreme Court precedent. *Sharpe v. AmeriPlan Corp.*, 3:12-CV-2542-O, 2013 WL 3927620, at *6 (N.D. Tex. July 30, 2013) *aff'd in part, rev'd in*

---

[1] *See* Pilgrim's Pride Corporation, 10-K Annual Report FY 2014 (Feb. 12, 2015), *available at* http://ir.pilgrims.com/secfiling.cfm?filingID=802481-15-15&CIK=802481 (FY 2014 Net Sales of $8.58 Billion); Market Capitalization based on closing share price of $21.03 on Sep. 25, 2015—near the 52-week low.

*part*, 769 F.3d 909 (5th Cir. 2014) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000), *In re Poly–Am., L.P.*, 262 S.W.3d 337, 356 (Tex. 2008).

For these reasons, the Motion must fail in its entirety as to all Plaintiffs (additionally, Defendant has not met its burden of showing that it had **any** arbitration agreement—much less an enforceable one—as to six of the Plaintiffs). At a minimum, Defendant's motion is premature until Plaintiffs have an opportunity to conduct discovery as to whether Defendants' procedures for modifying its arbitration policy render the alleged contracts illusory under Texas law. Additional discovery is also required as to whether Defendants have federal contracts or subcontracts that bring them within the scope of Defense Federal Acquisition Regulation Supplement 222.74 (aka the Franken Amendment),[2] Executive Order 13673, or other Federal prohibitions of arbitration for Title VII claims.

## I. Analysis

The Fifth Circuit employs a two-step analysis to determine whether a party may be compelled to arbitrate. *Jones v. Halliburton Co.*, 583 F.3d 228, 233-34 (5th Cir. 2009). The first step is whether the party has agreed to arbitrate. This is a two-part inquiry: "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement." *Id.* The second step in the analysis is whether "any federal statute or policy renders the claims nonarbitrable." *Id.* Under the Federal Arbitration Act, the question of whether there is a valid agreement to arbitrate the claims is a matter of contract formation governed by state law. *Id.*

Defendant's Motion to Compel Arbitration fails the first part of this test because: (1) Defendant has not proven the existence of any agreement as to six of the Plaintiffs; (2) the

[2] 48 C.F.R. § 222.7400 *et seq.* ("Restrictions on the Use of Mandatory Arbitration Agreements")

agreements in this case are not valid because they unconscionably impose arbitration costs on Plaintiffs. The agreements may also be invalid for illusory consideration.

Defendant's Motion to Compel Arbitration fails the second prong of this test because the federal policy in favor of adequate fora in which to vindicate Title VII claims prohibits placing undue costs on Plaintiffs in arbitration. The agreements may also violate the Federal policies embodied in the Franken Amendment and Executive Order 13673.

**A. The Alleged Arbitration Agreements are Invalid and Unenforceable.**

**1. Defendant has not carried its burden of showing that six of the plaintiffs had any arbitration agreement**

Defendant's Motion to Compel Arbitration fails as to Plaintiffs Margaret Jiles, Martha Sheppard, Larry Evans, Tierney Mitchell, Delores Morgan, and JT Birdine because Defendant has not carried its burden of establishing that ***any*** arbitration agreement exists, much less a valid one. Under Texas law, when a party seeks to compel arbitration, that party must establish that a valid arbitration agreement exists. *Zinante v. Drive Elec., L.L.C.*, 582 Fed. Appx. 368, 369 (5th Cir. 2014)(unpublished). In lieu of evidence, Defendant merely offers the "belief" of its Mt. Pleasant Plant Human Resources Director that such agreements might have once existed. This "belief" is not sufficient to establish a valid arbitration agreement exists. *See Magdaleno v. PCM Const. Servs., LLC,* 2014 WL 1760942, at *5 (S.D. Tex. May 1, 2014) (holding that employees for whom Defendants failed to submit signed arbitration agreements could not be compelled to arbitrate).

Because the case **cannot** be arbitrated as to the six Plaintiffs for whom there is no arbitration agreement, and because all Plaintiffs are properly joined under FRCP 20, severing the case so that some Plaintiffs go to arbitration and others to court would cause delay, be inconvenient to all parties, and prejudice Plaintiffs. *See also Williams v. Hoyt*, 556 F.2d 1336, 1341 (5th Cir.1977) (the district court has broad discretion over issues of joinder).

**2. <u>The arbitration agreements that Defendant produced were unconscionable when made and unenforceable under Texas and Federal Law</u>**

If an arbitration agreement shifts costs onto Plaintiffs to such an extent that it hinders their ability to seek vindication of their Title VII civil rights, it is both unconscionable under Texas law, and thus not a valid agreement, and unenforceable as a violation of the federal policy in favor of an adequate forum to bring federal statutory claims under the second inquiry. *See In re Poly–Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008); *see also Williams v. Cigna Fin. Advisors Inc.*, 197 F.3d 752, 763 (5th Cir. 1999).

The inquiry into whether cost-sharing provisions are unconscionable under Texas law and whether they violate the federal policy in favor of adequate fora tend to merge both as a matter of logic and in District Court opinions. Texas law specifically provides that "[a] court may not enforce an agreement to arbitrate if the court finds the agreement was unconscionable at the time the agreement was made." TEX. CIV. PRAC. & REM.CODE § 171.022. "[A]n arbitration agreement may render a contract unconscionable if the existence of large arbitration costs could preclude a litigant ... from effectively vindicating [his or her] federal statutory rights in the arbitral forum." *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010).

The United States Supreme Court has similarly held that "the existence of large arbitration costs could preclude a litigant [] from effectively vindicating [his or her] federal statutory rights in the arbitral forum." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513 (2000). The Federal Policy against shifting forum costs to Plaintiffs seeking to vindicate their civil rights is robust. Indeed, the Tenth, Eleventh, and D.C. Circuits have all adopted nearly *per se* prohibition on pre-dispute employment arbitration agreements that shift forum costs to Plaintiffs. *See Shankle v. B–G Maint. Mgmt. of Col., Inc.*, 163 F.3d 1230, 1235 (10th Cir.1999) (holding that arbitration agreement requiring litigant to pay one-half of arbitration costs "failed to provide an accessible

forum in which [Plaintiff] could resolve his statutory rights"); *see also Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir.1998) (holding that "steep" costs provide "a legitimate basis for a conclusion that the clause does not comport with statutory policy"); *see also Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1481-84 (C.A.D.C.1997) ("[W]e hold that an arbitrator's compensation and expenses must be paid by the employer alone. . . . [Plaintiff] could not be required to agree to arbitrate his public law claims as a condition of employment if the arbitration agreement required him to pay all or part of the arbitrator's fees and expenses.").

While the Fifth Circuit has declined to adopt such a bright-line bar on cost-shifting in employment arbitration, it has noted that the Supreme Court "plainly indicates that an arbitral cost allocation scheme may not be used to prevent effective vindication of federal statutory claims." *Williams v. Cigna Fin. Advisors Inc.*, 197 F.3d 752, 763 (5th Cir. 1999) citing *Gilmer v. Interstate Johnson Lane Corp.* 500 U.S. 20 (1991). If, by reason of cost-shifting, an arbitral forum does not provide "an adequate substitute for a judicial forum in protecting the particular statutory right at issue," then under Fifth Circuit precedent it cannot "be subjected to compulsory arbitration."[3]

Neither the Fifth Circuit nor the Texas Supreme Court have explicitly laid out the elements and mechanism of the test for when the forum costs of arbitration render an arbitration agreement unenforceable, but both have made clear that it is a case-by-case inquiry and have, through various precedents, detailed the relevant factors. For example, the Fifth Circuit suggested that a contract would be unenforceable if Plaintiffs were unable to pay the share of the costs allocated to them, or

[3] *See Id.* ("*Gilmer,* and the cases upon which it relies, make clear that whether a federal statutory claim can be subjected to compulsory arbitration depends upon whether the particular arbitral forum involved provides an adequate substitute for a judicial forum in protecting the particular statutory right at issue."); *See also Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 658 (6th Cir. 2003)(citing *Williams* for the proposition that "[if] the splitting or sharing of the costs of the arbitral forum under a particular arbitration agreement effectively prevents the vindication of a plaintiff's statutory rights, those rights cannot be subject to mandatory arbitration under that agreement.").

if such cost were prohibitively expensive for them. *Williams v. Cigna Fin. Advisors Inc* 197 F.3d 752, 764 (5th Cir. 1999)("The evidence in this case does not indicate that Williams is unable to pay one-half of the forum fees or that they are prohibitively expensive for him."). That court also looked to whether "the prospect of incurring forum fees hampered or discouraged [Plaintiff] in the prosecution of his claim." *Id.*

In *In re Poly-Am., L.P.*, the Texas Supreme Court held "that fee-splitting provisions that operate to prohibit an employee from fully and effectively vindicating statutory rights are not enforceable." 262 S.W.3d at 356. Under Texas law, establishing unenforceability requires "*some evidence* that a complaining party will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum." *Id.* (emphasis in original).

In *In re Olshan Found. Repair Co., LLC*, the Texas Supreme Court noted that the Fourth Circuit's approach was "particularly instructive." 328 S.W.3d 883, 893 (Tex. 2010) (citing *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549 (4th Cir.2001)). That test focuses on three factors: (1) the claimant's ability to pay the arbitration fees and costs, (2) the expected cost differential between arbitration and litigation in court, and (3) whether that cost differential is so substantial as to deter the bringing of claims. *Id.*

The Texas Supreme Court and District Courts within the Fifth Circuit have also repeatedly cited the Sixth Circuit's approach from *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 659–60 (6th Cir.2003). The Sixth Circuit in *Morrison* elaborated on the Fourth Circuit's approach by looking not only at the relative costs of arbitration versus litigation, but also at whether imposing the additional forum costs on Plaintiffs would have a "'chilling effect' of deterring a substantial number of potential litigants from seeking to vindicate their statutory rights."[4] The *Morrison* court

[4] *Morrison*, 317 F.3d at 661.

explained that protecting an "effective forum . . . for the vindication of [Plaintiffs'] statutory claims" requires invalidating cost-sharing schemes that deter potential litigants and lead to under-enforcement of federal civil rights law against the employer. *Id.*

The above-authority therefore indicates that the relevant factors in the case-by-case determination are as follows:

(1) the Plaintiff's ability to pay;

(2) the expected cost differential between arbitration and litigation in court;

(3) whether the cost differential hampers the particular Plaintiff's ability to pursue and fully and effectively vindicate her statutory rights; and

(4) whether the cost differential would deter a substantial number of claimants from pursuing their statutory rights.

*See, e.g. Sharpe v. AmeriPlan Corp.*, 2013 WL 3927620, at *6 (N.D. Tex. July 30, 2013) *aff'd in part, rev'd in part,* 769 F.3d 909 (5th Cir. 2014) (applying these standards to invalidate a cost-shifting provision that forced plaintiffs to post a bond before proceeding with arbitration); *see also Jones v. Fujitsu Network Commun., Inc.*, 81 F. Supp. 2d 688, 693 (N.D. Tex. 1999) (invalidating a cost-shifting provision that, like the provision at issue here, split arbitration costs evenly between employer and employee). These factors aid courts in deciding the fundamental question: Does the arbitral forum permit the effective vindication of Plaintiff's rights? *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. at 28.

***a. The Plaintiffs' Inability to Pay Significantly Interferes with Plaintiffs' Ability to Pursue Statutory Rights***

The arbitration agreements at issue here were unconscionable from the moment they were signed (if they were signed at all). Many of the Plaintiffs live at or below the poverty line. Requiring the Plaintiffs in this case to pay any costs toward arbitration would force them to choose between paying for necessities and paying for this litigation. While each Plaintiff has different

financial struggles, many of the Plaintiffs are in desperate financial situations where they are living paycheck to paycheck without the ability to pay their required expenses—let alone the costs of arbitration. *See* Exhibits 1-10, Declarations of Plaintiffs. Additionally, the Plaintiffs have no memory of signing an arbitration agreement. They had no knowledge about what they were signing, they were not provided with copies of the agreement, and arbitration was never explained or discussed with them. *Id.* For example, but not by way of limitation:

- Plaintiff Crystal Lane earns $7.25 per hour and relies on government assistance for food; there is no money left after her bills. Lane believes strongly in pursuing justice, but could not continue in the lawsuit if required to pay for arbitration.[5]

- Plaintiff Keyon Mitchell currently has no steady source of income, savings account, or health insurance. He could not afford to pay any arbitration costs. While he may have signed an arbitration agreement, Plaintiff Mitchell did not even know what arbitration was until his lawyer explained it to him.[6]

- Plaintiff Miranda McCulloch has been on an unpaid leave of absence since February. During 2014, she earned approximately $19,000. Ms. McCulloch does not anticipate ever being able to bear the burden of arbitration costs.[7]

- As a result of unemployment, Plaintiff Jimmy Mitchell fell behind financially and was forced to take out several loans, which he is struggling to repay. Mr. Mitchell would likely be unable to continue this lawsuit if he has to pay any costs.[8]

- Plaintiff Kristi King earned approximately $10,000 in 2014. As a result, King cannot afford housing and must live with a relative. King could not afford to pay for arbitration.[9]

- Plaintiff Cheryl Lane was unemployed for more than 2 ½ years and now earns just $8.00 per hour, lives with her mother, and cannot pay for her blood pressure medication, much less the money needed to pay for arbitration costs.[10]

---

[5] See Exhibit 1, Declaration of Crystal Lane.
[6] See Exhibit 2, Declaration of Keyon Mitchell.
[7] See Exhibit 3, Declaration of Miranda McCulloch.
[8] See Exhibit 4, Declaration of Jimmy Mitchell.
[9] See Exhibit 5, Declaration of Kristi King.
[10] See Exhibit 6, Declaration of Cheryl Lane.

- Plaintiff Carla Brooks is currently an unemployed, single mother-of-three who receives government assistance and Medicaid to provide for herself and her family. Ms. Brooks cannot afford to pay any money toward arbitration costs.[11]

***b. The Expected Cost Differential between Arbitration and Litigation is Significant Enough to Affect Plaintiffs' Statutory Rights***

The cost of JAMS arbitration is significant. There is a minimum fee of $400 per party filing fee. JAMS arbitrators and mediators in employment cases bill as much as $700 per hour and $7,000 per day.[12] The costs of proceeding in arbitration versus litigation are essentially equal in terms of lawyer time and expenses – the same depositions, motions, and preparations will be required whether the case proceeds before an arbitrator or a judge and jury. But even after the filing fee, this arbitration agreement requires Plaintiffs to continue to split hourly-fee forum costs for the arbitrator to resolve disputed issues of law and fact – a function that judges and juries provide in court at no additional cost to the parties.

Because the forum in arbitration bills by the hour, if Plaintiffs are forced to split those costs they will face a marginal unit cost for each additional measure of adjudication that they may seek. If Defendant obstructs discovery, Plaintiffs will have to weigh the forum costs of a motion to compel. If Defendant presents a settlement offer, Plaintiffs will have to weigh the forum costs of proceeding to the arbitration hearing. Arbitration will impose a cost to Plaintiffs of deploying every tool in their lawyer's tool kit. Every decision Plaintiffs face in vindicating their civil rights will be affected by the incentive to keep costs down by bringing fewer issues before the arbitrator. Defendant will likewise have an incentive to impose more forum costs on Plaintiffs.

---

[11] See Exhibit 7, Declaration of Carla Brooks.

[12] *See, e.g.* Exhibit 11 (JAMS Fee Agreement & Fee Schedule for mediation in *Beaty et al. v. Hillshire Brands Company, et al.*, a similar employment discrimination case before this Court).

Imposing a down-the-middle cost-sharing arbitration agreement would also have a significant deterrent effect on any similarly-situated victims of harassment and discrimination from pursuing their claims – the "chilling effect" described in *Morrison*. It would effectively render Pilgrim's Pride less subject to Title VII and other civil rights laws of the United States. While it may be clear that "statutory claims may be the subject of an arbitration agreement," the Supreme Court has made it equally clear that if certain terms of an arbitration agreement acted "as a prospective waiver of a party's right to pursue statutory remedies … we would have little hesitation in condemning the agreement as against public policy." *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 26 (1991), *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985).

Defendant will likely cite JAMS Employment Arbitration Rule 31, which provides a default rule that employees are not liable for arbitration costs beyond the initial $400 filing fee.[13] But Rule 31 is just a default provision that applies in the absence of another agreement. JAMS Employment Arbitration Rule 2 explicitly provides that an agreement by the parties trumps the Rule 31 cap. "Parties may agree on any procedures . . . in lieu of these Rules . . . including, without limitation . . . the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, and Rules 15(i), 30 and **<u>31</u>**."[14] The JAMS Rules thus promise Plaintiffs no relief from the unconscionable and unenforceable cost-splitting provision.

---

[13] JAMS Employment Arbitration Rules and Procedures 31(c), *available at* http://www.jamsadr.com/files/Uploads/Documents/JAMS-Employment_Arbitration_Rules-2007.pdf.

[14] *Id.* at Rule 2 (emphasis added).

**3. <u>The Federal Arbitration Act does not apply to Plaintiffs who worked in shipping.</u>**

The Federal Arbitration Act provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."[15] The Fifth Circuit has interpreted this provision as applying to workers "actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Rojas v. TK Commun., Inc.*, 87 F.3d 745, 748 & n.2 (5th Cir. 1996).

One of the plaintiffs, Tierney Mitchell, was a truck driver for Defendant. Another, Dominique Smith, loaded and unloaded trucks for the shipping of chickens in interstate commerce. These two plaintiffs are within the FAA's exemption for workers engaged in interstate commerce. Accordingly, any arbitration agreement fails as applied to Mitchell or Smith.

**4. <u>None of the Plaintiffs have any arbitration agreement with the JBS Defendants.</u>**

The Motion to Compel arbitration was filed only on behalf of Defendant Pilgrim's Pride Inc. The JBS Defendants are not parties to the motion, and do not purport to have valid arbitration agreements with the Plaintiffs. Accordingly, even if the court finds valid and enforceable arbitration agreements as to Defendant Pilgrim's Pride, there is no basis for dismissing or referring the JBS Defendants to arbitration.

**B. At a Minimum, Discovery is Needed to Learn Whether the Alleged Arbitration Agreements are Enforceable.**

**1. <u>If Defendant retained a unilateral right to modify its Arbitration Policy, then the consideration for the Arbitration Agreements was illusory</u>**

"Under Texas law, an arbitration clause is illusory if one party can 'avoid its promise to arbitrate by amending the provision or terminating it altogether.'" *Carey v. 24 Hour Fitness, USA,*

[15] 9 U.S.C. § 1.

*Inc.*, 669 F.3d 202, 205 (5th Cir. 2012)(quoting *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex.2010)). In a recent case, the Fifth Circuit applied this black letter rule to invalidate an employment arbitration agreement where a provision of the employer's policies other than the arbitration policy reserved to the employer the "right to revise, delete, and add to" any employer policy at any time.

The one-page documents under which Defendant seeks to compel arbitration against each Plaintiff are merely attachments to a larger Arbitration Policy of Defendant that Plaintiffs had no role in drafting and never saw. That larger document, Defendant's "Policy 300.0087: Policy of Arbitration of Employment-Related Disputes" is just one of a larger set of "Pilgrim's Pride Corporation Policies and Procedures." Defendant appears to have been the only party to the drafting of these internal policies. Absent discovery, Plaintiffs have no information about how Defendant drafted and what rights it retained to "revise, delete, and add to" this and other policies.

If Defendant's internal procedures gave it the ability to revise the arbitration policy to avoid mutuality, then any arbitration agreement would fail for illusory consideration under well-established Texas and Fifth Circuit law. Plaintiffs should have an opportunity for discovery on this point before the potentially illusory agreements are enforced.

**2. If Defendant has Entered Certain Government Contracts or Subcontracts, then the Arbitration Agreement is Unenforceable.**

Inspired by growing academic and empirical literature demonstrating the inequity of denying civil rights plaintiffs access to court, the Federal government has taken steps in the last five years to prohibit forced arbitration of Title VII litigation for government contractors and subcontractors.

In 2009, Congress adopted the so-called "Franken Amendment" to prohibit companies in the Defense Department supply chain from arbitrating Title VII cases. [16] The Defense Department has since incorporated this rule into its contracting regulations.[17] The Franken Amendment precludes any defense contractor or any entity that has a subcontract valued in excess of $1 million from entering or enforcing an agreement to arbitrate Title VII claims. In 2014, President Obama elaborated upon this policy against mandatory pre-dispute arbitration in Executive Order 13673.[18] That Order directs all Federal Agencies to ensure that for all federal contracts or subcontracts worth $1 Million or more, the contractor or subcontractor agree that Title VII claims may only be arbitrated by voluntary post-dispute consent of the employee. In other words, pre-dispute agreements to arbitrate Title VII disputes—like those at issue here—are against Federal policy.

The question, then, is whether Movant Pilgrim's Pride has a federal contract or qualifying subcontract. Pilgrim's's website boasts of its business-to-business sales, which include contracts with both retail and food service companies.[19] Pilgrim's is one of the two largest, if not the largest, chicken companies in America. Federal spending on meals, particularly by the Department of Defense, is significant. For instance, Sodexo Management Inc.'s contracts with the DoD to provide meals to Camp LeJeune and Camp Pendleton are each worth more than $100 Million.[20] And Pilgrim's Co-Defendant in this case, JBS USA, LLC has entered at least 8 million-dollar government contracts in the past year—rendering Plaintiffs' claims against that entity non-arbitrable.[21] It is likely that, within the hundreds of millions if not billions of dollars that the

---

[16] Department of Defense Appropriations Act, 2010, PL 111-118, §8116, 123 Stat 3409, 3454-55 (2009).
[17] 48 C.F.R., § 222.7400 *et seq.* ("Restrictions on the Use of Mandatory Arbitration Agreements").
[18] Exec. Order No. 13673, 79 Fed. Reg. 45309, 45314 (July 31, 2014).
[19] http://www.pilgrims.com/our-company/b2b.aspx
[20] Searchable at https://www.usaspending.gov.
[21] Searchable at https://www.usaspending.gov

Federal Government spends on food contracts each year, the Pilgrim's entity too has at least one subcontract of at least $1 Million to supply chicken products.

If Defendant has such a subcontract, then the arbitration agreements in this case are unenforceable violations of federal policy. But this information is uniquely within Defendant's possession, custody and control. Plaintiffs are entitled to discovery on this question before arbitration is compelled.

## II. Conclusion

Defendant's motion to compel arbitration should be denied because Defendant has not produced ***any*** arbitration agreement as to six of the Plaintiffs, and the purported agreements it has produced unconscionably shift forum costs to Plaintiffs. Alternatively, Plaintiff requests preliminary discovery to ascertain whether Defendant's internal policies render the agreements at issue illusory and whether Defendant's federal contracts or subcontracts render the agreements against Federal policy.

For the foregoing reasons, Defendant's Motion to Compel Discovery should be denied, or alternatively, held in abeyance pending limited discovery.

Dated: September 28, 2015

Respectfully submitted,

/s/ Jay D. Ellwanger

Eric M. Albritton
Texas State Bar No. 00790215
ema@emafirm.com
Michael A. Benefield
Texas State Bar No. 24073408
mab@emafirm.com
**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas 75606
Telephone: (903) 757-8449
Facsimile: (903) 758-7397

        Jay D. Ellwanger
        Texas State Bar No. 24036522
        jellwanger@dpelaw.com
        Stefanie T. Scott
        Texas State Bar No.24061617
        sscott@dpelaw.com
        DiNovo Price Ellwanger& Hardy LLP
        7000 North MoPac Expressway, Suite 350
        Austin, Texas  78731
        Telephone: (512) 539-2626
        Facsimile: (512) 539-2627
        jellwanger@dpelaw.com

        Sara Wyn Kane
        N.Y. State Bar No. 2935617
        skane@vkvlawyers.com
        James A. Vagnini
        N.Y. State Bar No. 2958130
        jvagnini@vkvlawyers.com
        Robert J. Valli, Jr.
        N.Y. State Bar No. 2383107
        rvalli@vkvlawyers.com
        Valli Kane &Vagnini, LLP
        600 Old Country Road, Suite 519
        Garden City, New York 11530
        Telephone: (516) 203-7180
        Facsimile: (516) 706-0248

        ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 28 day of September, 2015, with a copy of the foregoing document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

*/s/ Jay D. Ellwanger*
Jay D. Ellwanger